MERIDIAN ENTERPRISES
CORPORATION,
Appellant,

v.

KCBS, INC., John Cochran, Kathleen
Parker, Respondents.

No. 66181.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 3, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 8, 1995.

Application to Transfer Denied
Dec. 19, 1995.

John L. McMullin, Steven Asher, St. Louis, for appellant.

Joe D. Jacobson, Clayton, Mark D. Pasewark, St. Louis, for respondents.

WHITE, Judge.

Plaintiff, Meridian Enterprises Corp. (Meridian), brought an action against defendants, KCBS, Inc., John Cochran, and Kathleen Parker, for tortious interference with a business relationship, breach of fiduciary duty, and conspiracy to breach a fiduciary duty. The trial court sustained defendants' motions for directed verdict and Meridian appeals. We affirm.

Meridian makes group travel arrangements for various companies which are conducting meetings, for example, national sales seminars. Meridian negotiates and enters into agreements with airlines, hotels, and other service suppliers and arranges a travel package for its clients. Sam Toumayan serves as president of Meridian.

Toumayan and John Cochran became acquainted while they were both employed by Maritz Corp. in the 1970's. In 1985, Cochran contacted Toumayan regarding a group travel program to Nassau for certain employees of Pier I Imports. Cochran had known the president of Pier I for several years and was working as a consultant for Pier I. In 1986, Meridian did arrange travel services for the Nassau trip. After the Nassau trip, Toumayan and Cochran agreed Meridian would pay Cochran a commission for any accounts he brought to Meridian. Cochran was also to provide certain consulting services for Meridian.

On May 7, 1986, Pier I signed an agreement with Meridian where it would arrange a travel program to Hawaii in January 1988 for 500 Pier I employees. Meridian arranged all airline, hotel, and other services for this trip and there were no complaints from Pier I immediately after the trip concluded. Kathy Parker served as Meridian's program administrator for the 1988 trip to Hawaii.[1] Parker's duties at Meridian included planning large group meetings, dealing with hotels, pricing, negotiating, and discussing various aspects of the travel programs with Meridian's clients.

Sometime during Pier I's 1988 trip to Hawaii, Parker learned Pier I wanted to return to Hawaii for a meeting in 1990. Pier I originally planned to go to Las Vegas for its 1990 meeting and Meridian had prepared a letter of agreement for a Pier I trip to Las Vegas. Pier I never signed this letter of agreement.

Parker began working on Pier I's 1990 trip to Hawaii. In March 1988, Meridian entered into an agreement with American Airlines to "block out" seats for the 1990 trip. In May 1988, Meridian entered into an agreement with a hotel for the 1990 trip. Parker, as Meridian's representative, signed this agreement. According to Toumayan and Meridian's director of air transportation, Meridian does not enter into agreements with airlines and hotels until it knows it will get the client's business.

On July 12, 1988, Cochran informed Toumayan, by letter, he was ending his consulting relationship with Meridian. Cochran also stated he was forming his own company to specialize in situations similar to Pier I. The letter also provided "I do not perceive what I will be doing to be competitive to Meridian except, of course, the possible loss of revenue I might have brought to Meridian. Except for Pier I, I doubt there would be much."

Articles of Incorporation were filed for KCBS, Inc. on July 13, 1988. A subsequent form filed with the State of Missouri lists Parker as president and Cochran as secretary of KCBS. Cochran testified although he had previously invited Parker to be part of KCBS, when he formed KCBS he was unsure whether Parker would accept his offer. Cochran also testified the purpose for

---

1. There is a dispute regarding whether Parker was employed by another travel company for which Toumayan serves as president, or Meridian. Disposition of this issue is not necessary to decide this appeal.

forming KCBS was "to handle Pier I's business."

In mid August 1988, Toumayan began to wonder why Meridian had not received a letter of agreement from Pier I for the 1990 trip to Hawaii. On August 16, 1988, Toumayan called Cochran who told him Pier I's business would not be staying with Meridian. Toumayan then spoke to Parker who also told him Meridian would not be getting Pier I's business. The day of this conversation Parker left Meridian but it is unclear whether Parker resigned or was terminated. Parker had been working on Pier I's 1990 trip until her last day with Meridian.[2]

On August 22, 1988, Pier I signed a letter of agreement with KCBS for the 1990 trip to Hawaii. The agreement provided there would be 575 participants for the trip. There is evidence KCBS assumed the airline and hotel letters of agreement Meridian had negotiated. KCBS ultimately handled the 1990 trip for Pier I. Parker performed a large portion of KCBS's work on the 1990 trip.

Meridian filed an action alleging tortious interference with a business relationship, breach of fiduciary duty, and conspiracy to breach a fiduciary duty. The basis for Meridian's action was its not handling Pier I's 1990 trip to Hawaii. After Meridian completed its case in chief, defendants filed motions for directed verdict which the trial court sustained.[3] The trial court stated, in part, it was sustaining defendants' motions because the law was clear on the manner in which damages must be proven and there was no proof of damages. Plaintiff raises six points on appeal.

■ A trial court may only sustain a defendant's motion for directed verdict when the facts in evidence and the reasonable inferences which can be drawn therefrom are so strongly against a plaintiff as to leave no room for reasonable minds to differ. *Waggoner v. Mercedes Benz of North America, Inc.*, 879 S.W.2d 692, 694 (Mo.App.E.D.1994).

A case, however, should not be submitted to the jury unless each and every fact essential for liability is predicated on legal and substantial evidence, and the question whether the evidence is substantial is one of law for the court. *Id.*

We first address Meridian's fifth point in which it argues the trial court erred by holding as a matter of law it did not make a submissible case on the issue of damages. Meridian contends the evidence established the amount it would have earned as profit on Pier I's 1990 trip to Hawaii if defendants had "not diverted the business."

■ To obtain a damage award for lost profits, a plaintiff must produce evidence which provides an adequate basis for estimating the lost profits with reasonable certainty. *Manor Square, Inc. v. Heartthrob of Kansas City, Inc.*, 854 S.W.2d 38, 44 (Mo. App.W.D.1993). Proof of actual facts which present a basis for a rational estimate of damages without resorting to speculation is required. *Id.* Although in some cases a plaintiff is not required to show the amount of lost profits with exact certainty, the amount of estimated loss of profits should be supported by the best evidence available. *Ibarra v. Missouri Poster & Sign Co.*, 838 S.W.2d 35, 39 (Mo.App.W.D.1992). Loss of profits refers to the amount of net profits a plaintiff would have realized if its clients had not been lost as a result of a defendant's actions. *See Refrigeration Indus., Inc. v. Nemmers*, 880 S.W.2d 912, 920 (Mo.App. W.D.1994). In the case of an established business, it is "indispensable" for proof of anticipated profits that a plaintiff "include the income and expenses of the business for a reasonable anterior period, with a consequent establishing of the net profits during the previous period." *Brown v. McIBS, Inc.*, 722 S.W.2d 337, 341 (Mo.App.1986).

■ Relying on an exhibit and certain testimony, Meridian contends it presented

---

**2.** Given this court's disposition of the case, extensive discussion of Parker's activities from June 1988 to August 1988 is not necessary.

**3.** In an additional count, plaintiff sought a declaratory judgment regarding among other things which company employed Parker. The

trial court dismissed this count without prejudice. The court also found count III of the petition stated a claim against Cochran but not Parker and if this count stated a claim against Parker, judgment would be entered in her favor.

sufficient evidence of damages. Meridian argues if it handled Pier I's 1990 trip its net profit would have equaled its gross profit. Meridian introduced into evidence an exhibit which lists "income" received by KCBS from Pier 1 for the 1990 trip to Hawaii as $1,000,-745. Also listed on this exhibit are "expenses" which include the costs of air travel, hotel, meals, other program costs such as transferring people from the airport to the hotel and activities during the trip, pretrip materials, mailing, gratuities, and travel directors who provide on site services during the trip. The expenses total $793,311. The exhibit does not list any overhead expenses.

Toumayan testified the gross profit for a trip like Pier I's 1990 trip is between eighteen and twenty-five percent and Meridian's profit "[w]ould have been as an average twenty-one" percent. He also testified Meridian's overhead for handling the 1990 trip except for travel directors' expenses would have been zero because the "overhead was ongoing." Karla Hahn, Meridian's executive vice president of finance, testified Meridian's gross profit for the 1990 trip would have been $207,000. Hahn also testified Meridian would not have incurred any additional expenses except possibly $200 for phone calls and facsimile use.

Meridian's evidence is simply insufficient to prevent the jury from estimating lost profits without resorting to speculation. The cost and expense of operation is a considerable item and in an action for loss of profits is an essential item in the proof of damages. *Coonis v. Rogers,* 429 S.W.2d 709, 714 (Mo. 1968). Although "it is not necessary to show the income and expenses of the entire business where only a portion thereof has been lost, it is still necessary to offset the expenses attributable to that portion from the revenues derived from such portion in order to reach a net profit amount which can be recovered in damages." *All Star Amusement, Inc. v. Jones,* 727 S.W.2d 930, 932 (Mo.App.1987).

Meridian's evidence failed to establish the overhead expenses which would have been attributable to Meridian's work for the 1990 trip. The gross revenue and gross profit for the 1990 trip were approximately $1,000,000 and $200,000, respectively. Meridian presented no evidence as to rent or mortgage, utilities, support staff salaries, or other overhead costs Meridian would have incurred from 1988 until Pier I took the trip in March 1990. Meridian also failed to present any evidence the revenue from Pier I's 1990 trip would have constituted such a small portion of Meridian's overall revenues as to not increase its expenses. *See High Life Sales Co. v. Brown–Forman Corp.,* 823 S.W.2d 493, 502–03 (Mo. banc 1992). The fact Meridian's overhead costs would have been expended when Pier I took the 1990 trip or was "ongoing" does not negate the requirement Meridian present evidence of the overhead costs attributable to the 1990 trip. Although not classified as overhead, Meridian further failed to introduce evidence of costs for its program administrator.

 Additionally, Meridian failed to produce the best evidence available. Meridian did not introduce its tax returns or offer testimony of the accountant who prepares the returns. Meridian failed to introduce financial records of income and expenses for a reasonable anterior period. Meridian also did not present any evidence regarding its net profits for its handling of Pier I's 1988 trip to Hawaii. The testimony and exhibit simply did not constitute the best evidence available. The trial court did not err by sustaining defendants' motions for directed verdict.

Meridian's remaining points do not raise additional arguments regarding sufficiency of the evidence as to damages. Accordingly, these remaining points need not be addressed.

The judgment of the trial court is affirmed.

SMITH, P.J., and PUDLOWSKI, J., concur.